VILLANTI, Judge,
Concurring.
Although I fully concur in this opinion, I cannot help but further comment on the lack of professionalism and common courtesy displayed by all of the participants in this ease, which has ultimately resulted in the expenditure of the parties’ resources, the trial court’s time, and this court’s time.
It is not clear from the record exactly what steps were taken by counsel for Ap-pellees to schedule the CME of Mr. Rush’s elderly client, Mr. McKibban, with Dr. Shahnasarian and to communicate the intended scope of that examination. What is clear is that neither party sought or ob *768 tained a court order setting forth the parameters of the CME before it was scheduled to occur. While such an order is not a necessity, there are apparently a sufficient number of disputes surrounding this type of examination to warrant the existence of a standard “Hillsborough County Uniform Order on CMEs.” This order provides, in pertinent part, that an “exami-nee will not be required to complete lengthy forms upon arrival at the examiner’s office.”
Mr. Rush did not initially object to the CME of his client and, as mentioned above, did not seek to have the court enter the Uniform Order on CMEs. However, late on the Friday afternoon before the Monday morning CME, Mr. Rush faxed objections to Appellees’ counsel that essentially tracked the provisions of the Uniform Order. Upon receipt of these objections, counsel for Appellees apparently took no steps to alert Dr. Shahnasarian to Mr. Rush’s objections and apparently did not attempt to contact Mr. Rush to discuss the matter.[2] Mr. Rush provided a copy of his objections to Mr. McKibban, and Mr. McKibban dutifully took them with him to the CME. However, Dr. Shahnasarian, for his part, refused to honor the objections and told Mr. McKibban that he would follow his standard protocol unless “he got a court order to the contrary.” Dr. Shah-nasarian then handed Mr. McKibban a seventeen-page questionnaire and expected him to complete it without the assistance of counsel.
Understandably, Mr. McKibban became concerned that his responses might be harming his case; so he elected to call Mr. Rush. Upon receiving the call, Mr. Rush drove to Dr. Shahnasarian’s office to address the objections in person rather than addressing them over the phone with Dr. Shahnasarian or opposing counsel. Needless to say, Mr. Rush’s actions were perceived as disruptive and adversarial. Ultimately, however, the court imposed the conditions on the CME sought by Mr. Rush, including allowing Mr. McKibban to complete the forms with the assistance of counsel and with limitations on the use of Mr. McKibban’s responses.
Clearly Mr. Rush should not have waited until the day before the CME to file his objections. As the facts unfolded in this case, it would have behooved him to obtain entry of the Uniform Order upon being served with the notice of CME. And clearly it might have been better had Mr. Rush attempted to call Dr. Shahnasarian rather than simply appearing in his office lobby. However, it is equally clear that counsel for Appellees should not have ignored Mr. Rush’s objections when they were received. As the trial court noted at the evidentiary hearing, counsel for Appel-lees could have elected to voluntarily comply with the limitations included in the Uniform Order in the spirit of professionalism. And Dr. Shahnasarian — no stranger to serving as an expert in personal injury litigation — should have addressed the issue with counsel for Appellees when presented with Mr. Rush’s objections rather than forcing the disputed forms on Mr. McKibban and then legalistically instructing Mr. Rush to “get a court order.” While I certainly do not condone all of Mr. Rush’s actions, I agree with my colleagues that, in light of the conduct displayed by all of the professionals involved in this matter, Mr. Rush’s conduct was not sanc-tionable. Had professionalism by any of *769 them prevailed, this matter could have been entirely avoided.

. While one of the attorneys representing Ap-pellees testified that he was on a plane on the Monday morning of the CME, the record indicates that at least two other attorneys at the firm were working on the case.